UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS SIMS,

                    Petitioner,                    Case Number 12-13506
                                                   Honorable David M. Lawson

v.

STEVEN RIVARD,

                    Respondent,
_____/

## <u>CORRECTED</u>
## <u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

Michigan prisoner Darius Sims has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for murder and firearms offenses. He contends that he was denied the effective assistance of trial counsel, he was denied a fair trial because of prosecutorial misconduct, two witnesses committed perjury, there was insufficient evidence to convict, and he was denied his right to a public trial when the judge closed the courtroom for jury selection. Because none of these claims has merit, the Court will deny the petition.

I.

Sixteen-year-old Jajuan Gardner was shot and killed as he stood outside the apartment of Joshua Dykes in Detroit, Michigan. The State alleged that petitioner Sims aided shooter Dejuan Kelly in the killing by handing Kelly the handgun used in the shooting. Kelly was charged with first-degree murder but acquitted at a trial in November 2006. The petitioner was charged with first-degree murder in June 2007; the petitioner's jury convicted him of the lesser crime of second-degree murder.

The State was not favored with cooperative witnesses, and many of them had given conflicting accounts of the shooting. Joshua Dykes, a friend of Jajuan Gardner, Kelly, and the petitioner, testified that on March 18, 2006, Gardner was at Dykes' apartment playing dice with several young men. Both Kelly and the petitioner were there. When the dice game ended, Dykes left and went to another apartment. He testified that he did not observe any arguments, but he admitted that he had difficulty remembering the details of the day and the shooting, as well as the details of his previous statements and testimony. The prosecutor repeatedly attempted to refresh his recollection or impeach him with his previous testimony and statements.

Dykes admitted that he made a prior statement that the petitioner handed a gun to Kelly and that Kelly shot Gardner. And Dykes acknowledged that this earlier statement was true. However, Dykes at times indicated that he did not see an argument or the shooting. But he did testify that as he was walking towards his apartment, he heard Kelly and Gardner arguing about a gun, before observing the petitioner take a gun out of his right hoodie pocket and hand it to Kelly. After Dykes went into his apartment, he heard shots fired. Dykes said that although he made multiple prior statements where he said he saw Kelly shoot Gardner, he testified at trial that he did not see the actual shooting. On redirect examination, Dykes confirmed that he told two police officers that the petitioner gave Kelly the gun, and that he testified to this at the investigative subpoena hearing.

After Gardner was shot, Dykes and Jones went over to help him. Before the police arrived, Gardner called his father on the phone. Dykes' mother was dating Gardner's father.

Dykes admitted that he was confined in the Wayne County Youth Home with Kelly and the petitioner, but he said they did not talk about the case.

Demarco Jones, who was seventeen years old at the trial, testified that Gardner was his best friend. At the trial, Jones said that he was standing in the doorway of his apartment during the early evening hours of March 18, 2006, when he looked across the courtyard and saw a group of young men arguing outside of Joshua Dykes' apartment. Dejuan Kelly and Jajuan Gardner were part of the argument. Jones saw Kelly ask the petitioner for his gun. The petitioner handed a gun to Kelly, who then fired shots at Gardner. After the first two shots, Jones went inside his apartment and closed the door. Jones heard three more shots and then saw someone run past his window. Jones then went over to assist Gardner, who was laying on the ground.

Jones had made multiple statements, and not all of them matched. He testified that the statement he made to the police on the day of the shooting was true, but said that he lied when he testified earlier at Kelly's trial. Jones testified that he lied about Kelly being the shooter in retaliation for an earlier disagreement. At the petitioner's preliminary examination, Jones testified that he lied at Kelly's trial because he had been threatened. Jones later apologized to Gardner's grandmother for testifying falsely at Kelly's trial. Jones, however, confirmed that his testimony at an investigative subpoena hearing that the petitioner handed a gun to Kelly, who then shot Gardner, was the truth. Jones also acknowledged that his prior testimony at Kelly's 2006 preliminary examination was truthful, except for his testimony that he did not see how Kelly obtained the gun.

Jones admitted that he failed to appear in court several times. He did not come to court the first time because he felt threatened by "two guys" near his house. Jones was confined in the Juvenile Detention Facility because he did not appear for court. Joshua Dykes and Dejuan Kelly were also incarcerated at the facility, although Jones and Kelly were kept separated. After his release from the facility, Jones was approached by some men who asked him why he was going to

court, informed him they had guns, and that they could have "got" him. Jones went to Florida and the petitioner's trial date was adjourned because Jones did not appear.

Jajuan Omar Gardner, the victim's father, testified that he was driving home from Flint when he received a phone call from Joshua Dykes, who informed him that his son had been shot. Dykes then put the son on the phone. Mr. Gardner testified that his son said, "He got me." When the father asked who, the son said it was Dejuan Kelly. The father admitted he did not inform anyone of this alleged conversation with his son until he testified at Kelly's preliminary examination. He did not talk to the police because he wanted to take care of the situation on his own.

The victim's grandmother, Baby Gee Joshual, testified that she attended the trial of Dejuan Kelly. After Kelly's trial, Ms. Joshual testified that Demarco Jones contacted her and apologized for testifying falsely at Kelly's trial. Jones informed her he lied because he was afraid.

Joshua Johnson, a defense witness, testified that he knew Demarco Jones from the Paul Robeson Projects and from the Mack Avenue Production studio. While they were at the studio during the summer, Jones told him "that [Gardner's] father pa[id] him and Josh [Dykes] to come testify in court and that he really didn't know what happened." Jones also told Mr. Johnson that he didn't see anything.

As noted, the jury convicted the petitioner of the firearm offense and the lesser murder charge. He was sentenced to a prison term of 13 to 22 years for murder, to be followed by a two-year term for the firearm offense.

The petitioner filed a motion for a new trial, alleging, among other things, that his attorney was ineffective. After holding an evidentiary hearing on some of those claims, the trial judge issued

an order denying the petitioner's motion for a new trial. *People v. Sims*, No. 07-010549-01-FC (Wayne Cty. Cir. Ct. July 15, 2009).

The petitioner's conviction was affirmed on appeal. *People v. Sims*, No. 284564, 2010 WL 4963560 (Mich. Ct. App. Dec. 7, 2010); *lv. den.* 489 Mich. 972, 799 N.W.2d 8 (2011) (Table).

The petitioner then filed a petition for writ of habeas corpus, which was held in abeyance so that the petitioner could return to the state courts to exhaust additional claims.

The petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Sims*, No. 07-010549-01-FC (Wayne Cty. Cir. Ct. Apr. 16, 2014). The Michigan appellate courts denied the petitioner leave to appeal. *People v. Sims*, No. 323984 (Mich. Ct. App. Dec. 4, 2014); *lv. den.* 498 Mich. 865, 866 N.W. 2d 431 (2015) (Table).

On September 8, 2015, this Court reopened the case and permitted the petitioner to file an amended habeas petition.

The petitioner seeks relief on the following grounds:

I. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel.

II. Petitioner Sims was denied a fair trial where the prosecutor repeatedly referred to evidence contrary to the record to bolster the witnesses credibility, continuously made improper statements, and improperly appealed to the sympathies of the jury—in violation of Petitioner's constitutional right to a fair trial—constituting prosecutorial misconduct.

III. Petitioner was denied his due process rights where his convictions were obtained through the knowing use of false and perjured testimony by witnesses at trial, and where the prosecution failed to correct the false and perjured testimony by witnesses at trial, and where the prosecution failed to correct the false and perjured testimony. The actions of the prosecutor constituted prosecutorial misconduct.

IV. Petitioner was denied his constitutional right to effective assistance of counsel and due process where trial counsel had an actual conflict of interest due to counsel blaming petitioner of committing the crime at codefendant's trial.

V. Petitioner was denied his constitutional right to the effective assistance of counsel and due process where counsel failed to present a strategic defense, failed to prepare, and failed to investigate.

VI. The evidence is insufficient to sustain petitioner's conviction of aiding and abetting to second-degree murder: alternatively, it would be a denial of due process and a miscarriage of justice to allow petitioner's conviction to stand.

VII. Petitioner is entitled to habeas relief where the public was excluded from the courtroom and there was no accommodation for public access to the proceedings during jury selection and defense counsel was constitutionally ineffective when he failed to object to the closure of the courtroom to the public, which violated petitioner's Sixth Amendment right to public trial.

Amend. Pet. at 6-7. The state responded, alleging that the petitioner's claims are procedurally defaulted or lack merit.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve all his claims in the trial court by timely objection, and the state court's denial of those claims on that basis is an adequate and independent ground for the denial of relief under state law, which is not reviewable here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It "is not a jurisdictional bar to review of the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural default will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Sims filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and

demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

In his first, fourth, and fifth claims, Sims contends he was denied the effective assistance of counsel for various reasons. Some of the claims were addressed on direct appeal, and others were raised in a post-conviction motion. One of the claims raised in the motion — that counsel was ineffective by failing to prepare, investigate, or present a strategic defense — was never addressed on the merits by any Michigan court, because the trial judge mistakenly concluded that the issue had been decided on direct appeal. "Under [*Harrington v. Richter*, 562 U.S. 86 (2011)], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d

450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99). "Yet this presumption is not, as the *Richter* Court made clear, irrebuttable: '[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely.'" *Ibid.* (quoting *Richter*, 526 U.S. at 99-100). Here, the failure to address the merits of the petitioner's fifth claim plainly is due to the trial judge's inadvertence. AEDPA deference applies "only when a federal claim was 'adjudicated on the merits in State court.'" *Johnson v. Williams*, 568 U.S. 289, 133 S. Ct. 1088, 1097 (2013) (quoting 28 U.S.C. § 2254(d)). It does not apply when "a federal claim is rejected as a result of sheer inadvertence." *Ibid.* "Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) (citing *Brown v. Smith*, 551 F.3d 424, 428, 430 (6th Cir. 2008)). The Court will apply that standard to the petitioner's fifth claim.

The petitioner was represented earlier in his criminal case by two other lawyers. His trial counsel, Terry Price, was his third lawyer, who happened to be the same attorney that represented Dejuan Kelly at trial when he was acquitted of this crime. The petitioner complains here that his trial counsel was laboring under a conflict of interest because he had represented Kelly. And he says that counsel had an unrelated conflict: the threat of an arrest warrant by the prosecutor for unpaid child support. The petitioner also contends that trial counsel's performance was deficient because he did not call his second attorney, Patricia Slomski, to testify about an inconsistent statement Demarco Jones made to her when she interviewed him, and he did not call Kelly as a witness at the petitioner's trial.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. at ---, 134 S. Ct. at 1702 (quoting *Metrish v. Lancaster*, 569 U.S. ---, ---, 133 S. Ct. 1781, 1786 (2013)). The standard is "all the more difficult" on habeas corpus review because, when AEDPA deference

applies, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel' actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

1.

The Michigan Court of Appeals rejected the petitioner's two-pronged conflicts argument on the merits. It held that Price's representation of both the petitioner and Kelly created no conflict because the two were not jointly charged or tried, and the record did not show that Price's performance was limited by his previous engagement by Kelly. *People v. Sims*, 2010 WL 4963560, at *3.

The Michigan court's decision properly applied federal law. A criminal defendant is entitled to the effective assistance of counsel free from conflict. *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). In *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the Supreme Court held that prejudice is presumed if counsel is burdened by an actual conflict of interest. But the presumption of prejudice applies only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350. The Supreme Court, to date, has only applied the *Sullivan* presumption of prejudice "in the case of a conflict of interest arising from multiple concurrent representation of defendants." *Jalowiec v. Bradshaw*, 657 F.3d 293, 314-15 (6th Cir. 2011). The rule that proof of prejudice is excused when the lawyer is burdened by a conflict of interest has been limited to cases where the conflict arises from multiple representation. *Mickens v. Taylor*, 535 U.S. 162, 172-74 (2002).

In this case, the petitioner does not suggest that his lawyer's conflict of interest arose from multiple representation, that is, "where a single attorney simultaneously represents two or more codefendants in the same or separate proceeding(s), whereas successive representation occurs where defense counsel has previously represented a co-defendant or trial witness." *Jalowiec*, 657 F.3d at 315. Attorney Price did not commence his representation of the petitioner until Kelly's case had concluded; in fact, the two cases were not even pending at the same time. Therefore, the petitioner must show prejudice to succeed on his Sixth Amendment claim in this case. *See Harrison v. Motley*, 478 F.3d 750, 756-57 (6th Cir. 2007) (holding that neither *Cuyler* nor *Holloway* applied to the petitioner's claim that his lawyers had a conflict of interest in representing him based on their fears of criminal prosecution and malpractice for witness tampering); *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Cuyler* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005) (finding the presumed prejudice standard inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *Moss v. United States*, 323 F.3d 445, 473 n.25 (6th Cir. 2003) ("As we have discussed, *supra*, the *Mickens* rationale compels our strong hesitation to apply *Cuyler* to conflicts of interest cases arising outside of the joint representation context.").

As the Michigan Court of Appeals noted, the record shows that trial counsel aggressively represented the petitioner throughout the trial. *Sims,* 2010 WL 4963560, at * 3. He made numerous objections, vigorously cross-examined the witnesses, put on a defense witness of his own, argued for the admission of several pieces of evidence, and made opening and closing arguments that

attacked the credibility of the prosecution witnesses. There is no showing that trial counsel's performance was impeded by any conflict of interest.

2.

The Michigan Court of Appeals rejected the argument that a looming child support arrest warrant dampened trial counsel's performance, finding that Price's hearing testimony on that point simply was not credible. The court wrote:

> Here, at an evidentiary hearing, trial counsel testified that on the Friday after the first day of trial, a former prosecutor told him that the prosecutor in this case had an arrest warrant and was going to have trial counsel arrested. Trial counsel claimed that he then spent the entire weekend believing that he might be arrested in his home, which detracted from his trial preparation. When he returned to the courthouse the following week, a bailiff told him that the prosecutor had previously entered the courtroom and demanded that the trial court have trial counsel arrested on the warrant. As a result, trial counsel sat through trial believing he might be arrested if he aggravated the prosecutor or the trial court. Thus, he was less aggressive, less zealous, and a more timid lawyer. He was unable to object or argue the case as he would have liked. In contrast, the prosecutor testified that she became aware of an arrest warrant for trial counsel, but she did not prepare it, execute it, or demand his arrest. She did not want him to be arrested, as it would have delayed the trial. Similarly, the bailiff testified that trial counsel's version of events was untrue. He testified that he told trial counsel about the possibility of an arrest warrant, but assured him that no one would be arrested in the courtroom. He testified that trial counsel appeared calm, and said he had already scheduled a hearing on the matter, but was unaware of the warrant. The trial court flatly rejected trial counsel's testimony on the matter at the evidentiary hearing, again finding him to be an incredible witness. We defer to this determination.

*Sims*, 2010 WL 4963560, at *3 (footnote omitted). This Court likewise defers to those factual findings. Because there was no conflict, and no diminished performance, there was no constitutional violation.

3.

Both the trial court and the Michigan Court of Appeals likewise rejected the petitioner's argument that the failure to call his previous attorney as a witness deprived him of effective counsel,

but for different reasons. The trial court determined that not calling Ms. Slomski was a strategic

decision, but the appellate court rejected the claim because no prejudice resulted. The court of

appeals summarized the hearing testimony on the point:

> At a remand evidentiary hearing, defendant's second attorney testified that when she represented defendant, she interviewed Jones in September of 2007, and he told her that he did not witness the shooting, but learned of the circumstances of the shooting from another boy. Jones also told her that he provided this information to the prosecutor, but that she threatened him with criminal charges if he did not testify. When trial counsel was retained, defendant's second attorney relayed to him her conversation with Jones. The second attorney testified that trial counsel said he would be in touch with her in the future to testify for defendant. Similarly, at a separate evidentiary hearing, trial counsel testified that he wanted to call the second attorney as a witness to elicit the above information. Yet, he failed to subpoena her or identify her on the witness list. He claimed that he had been in contact with her before trial, that he saw her the morning of trial, and that he assumed she would be in the courthouse when he needed her. However, he could not find her and was forced to present his case without her testimony. Trial counsel further testified that failing to call the second attorney as a witness was not a matter of trial strategy. The second attorney's testimony at the evidentiary hearing, however, contradicted trial counsel's testimony. She testified that she had recently undergone surgery and was at home recovering at the time of the trial. Thus, she could not have seen trial counsel that morning in the courthouse. She further indicated that she did not talk to trial counsel at any point after their initial conversation. On this record, the trial court found that trial counsel was an unreliable witness, rejected his testimony, and concluded that his decision not to call the second attorney was a trial strategy.

*Sims*, 2010 WL 4963560, at *2.

The court of appeals determined that Price's lapse in failing to bring in Sims's second

lawyer, Slomski, did not cause prejudice, because Price was able to offer other evidence of Jones's

varying and inconsistent statements. That was a reasonable application of governing federal law.

The upshot of Slomski's trial testimony would have been that when she interviewed Jones in

September of 2007, he told her that he did not witness the shooting, but learned of the circumstances

of the shooting from another person. Jones also told Slomski that when he told this to the

prosecutor, she threatened him with criminal charges if he did not testify against the petitioner. That

-14-

testimony would have been cumulative of other evidence and witnesses presented at trial which challenged Jones's credibility and his motives for testifying. *Wong v. Belmontes*, 558 U.S. 15, 22-23 (2009); *see also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995). The jury heard significant evidence that Jones did not actually see the shooting, that he had changed his story several times, and that he had been offered money by the victim's father to testify against the petitioner. Because the jury was "well acquainted" with evidence that would have supported the petitioner's theory that Jones was not truthful, additional evidence in support of the petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23. The state courts did not unreasonably apply Supreme Court precedent when finding no prejudice.

4.

Similarly, the Michigan courts were not impressed with the argument that attorney Price should have called Dejuan Kelly at trial. The Michigan Court of Appeals relegated the decision not to call Kelly to trial strategy. The trial judge noted that Price had not called Kelly to testify at his own trial and may have done so because he did not believe that Mr. Kelly would be a good witness. *People v. Sims*, No. 07-010549-01-FC, * 9-10 (Wayne Cty. Cir. Ct. July 15, 2009). Expanding on that theme, the court of appeals observed that "both trial counsel and Kelly testified that Kelly arrived at the courthouse to testify for [the petitioner], but trial counsel chose not to call him because he wore a 'loud' yellow shirt, which trial counsel believed would not have 'looked very good at all' in a courtroom." *Sims*, 2010 WL 4963560, at *2. Those decisions did not misapply federal law.

A criminal trial frequently requires defense counsel to make a number of strategic decisions. Where two reasonable but divergent paths are presented, reviewing courts studiously avoid second-guessing counsel's choices. In fact, *Strickland* requires a reviewing court to presume that

defense counsel's conduct was not the product of deficient performance. "To counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice.").

The essence of Kelly's trial testimony, according to his affidavit and hearing testimony, was that he was not at the crime scene. As someone who was not present, he would not have had much to offer on what happened. Of course, his testimony would have undercut the State's theory that Kelly was the shooter, aided by the petitioner. But calling Kelly would have given the prosecutor an opportunity to explore the denials of a witness, whom defense counsel concluded was not very good. Reviewing courts — especially habeas courts — do not second-guess those decisions.

5.

Finally, even under pre-AEDPA review criteria, the petitioner cannot prevail on his arguments that attorney Price was unprepared, failed to investigate, and did not present a strategic defense. Sims has offered no evidence that Price was not prepared for trial. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). And as mentioned above, the record shows that defense counsel vigorously represented the petitioner throughout the trial. The record refutes the petitioner's contention that trial counsel was unprepared.

Sims's argument that Price failed to investigate and call witnesses fairs no better. Although the petitioner mentioned the names of several witnesses that he contended should have been called, he did not attach any affidavits from those witnesses to his motion for relief from judgment or to his post-conviction appellate briefs, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf. As mentioned above, conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. By failing to present any evidence to the state courts in support of this ineffective assistance of claim, the petitioner has not furnished any basis to evaluate the soundness of his argument, or to determine if the state courts misapplied federal law. He is not entitled to an evidentiary hearing on this ineffective assistance of counsel claim in this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). In the absence of proof, the petitioner is unable to establish that he was prejudiced by counsel's failure to call those witnesses to testify at trial, and therefore cannot sustain the second part of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Finally, Sims says that his attorney was ineffective because he did not call Sims himself as a witness. But when a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A federal habeas court indulges "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (citation omitted). To overcome that presumption, a

habeas petitioner must point to evidence in the record demonstrating that he somehow alerted the trial court to his desire to testify. *Ibid.* There is no such evidence in this record.

Because the record is devoid of any indication by the petitioner that he disagreed with counsel's advice that he should not testify, the petitioner has not overcome the presumption that he willingly acceded to that advice. *Gonzales*, 233 F.3d at 357. Nor has the petitioner made a convincing argument that the advice "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

None of the petitioner's claims of ineffective assistance of counsel support issuance of a writ of habeas corpus.

### B.

The petitioner argues that the trial prosecutor engaged in several instances of misconduct. He says that she misrepresented facts during jury selection, injected irrelevant information in her opening statement, evoked sympathy for the victim, and vouched for her witnesses. Those acts, says the petitioner, denied him a fair trial.

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). When the issue is the prosecutor's remarks, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Moreover, the appropriate standard of review

for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id*., at 642.

*Darden*, 477 U.S. at 181.

The petitioner's primary complaint focuses on the prosecutor's remarks during jury selection, when discussing the law of aiding and abetting, she informed the jurors that "the person who actually shot this young man escaped conviction." The judge sustained defense counsel's objection to this comment, and the prosecutor immediately rephrased her comment and stated that the jurors would hear testimony that the shooter was found not guilty. She also asked the jurors if they thought that juries could sometimes be wrong. The prosecutor asked one prospective juror if it would be in the back of his mind that the shooter had been found not guilty. The judge overruled defense counsel's objections to those questions and remarks. Later, over defense counsel's objection, the prosecutor asked a prospective juror whether he could find the petitioner guilty without regard to what the other jury had done. The prosecutor later asked a prospective juror whether they could find the petitioner guilty as an aider and abettor even though the person who did the shooting "got away with it."

The prosecutor's remarks were nothing more than an attempt to determine whether the prospective jurors could find the petitioner guilty as an aider and abettor even though the actual shooter had been acquitted. Under Michigan law, a conviction of a principal is not a prerequisite to a valid conviction of being an aider and abettor. *See People v. Paige,* 131 Mich. App. 34, 39, 345 N.W.2d 639 (1983). The prosecutor's comments accurately reflected Michigan law. Moreover, the judge later gave the jurors the instruction on aiding and abetting, which informed the jurors that although they had to find that the petitioner assisted someone else with a crime, it did not matter whether that person had actually been convicted of the crime. Because the judge gave the jurors an

accurate instruction on aiding and abetting, the prosecutor's comments during *voir dire* concerning Mr. Kelly's acquittal did not prejudice the petitioner. *See Lang v. Gundy,* 399 F. App'x 969, 975 (6th Cir. 2010).

The petitioner next contends that the prosecutor injected irrelevant information during her opening statement by implying that she and the members of the jury would have resolved the argument that took place between the parties by simply fighting, instead of shooting. The Sixth Circuit has noted that there are no Supreme Court cases that support the idea that a prosecutor's questions or remarks that attempt to introduce irrelevant evidence constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 F. App'x 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor attempted to argue irrelevant facts in her opening statement would not entitle the petitioner to habeas relief.

The petitioner contends that the prosecutor vouched for her witnesses several times during her closing argument. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing any perceived prestige of the office of the prosecutor behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). Generally, improper vouching involves either blunt comments, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not presented

to the jury or of the credibility and truthfulness of witnesses and their testimony, *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994).

None of the prosecutor's comments suggested any special knowledge or referred to items that were not part of the record. Moreover, the judge instructed the jurors both at the beginning of trial and during final instructions that the lawyers' statements and arguments were not evidence. The judge also instructed the jurors that they should only accept things that the lawyers said that were supported by the evidence or by their common sense and knowledge. The prosecutor herself conceded in closing argument that the jurors needed to base their decision on the evidence, not what she or defense counsel said. These instructions and concessions, when viewed against the minor lapses of the prosecutor, undermine any concern that the prosecutor's conduct deprived the petitioner of a fair trial.

The petitioner next contends that the prosecutor attempted to invoke sympathy for the victim when she argued that the victim "laid there and died and talked to his father with his dying breath." That remark does not support a habeas writ. The prosecutor's comment, even if it was an attempt to invoke sympathy from the jury, was isolated, not extensive, and only a small part of the closing argument that focused on summarizing the evidence. *See Byrd v. Collins,* 209 F. 3d 486, 532 (6th Cir. 2000). And the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. *See Cockream v. Jones,* 382 F. App'x 479, 486 (6th Cir. 2010).

The petitioner also contends that the prosecutor committed misconduct when she argued that Jones or Dykes changed their testimony because they were afraid or had been threatened. Although prosecutors may not "bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial,'" they may "'argue reasonable inferences from the evidence.'" *Byrd*, 209 F.3d

at 535 (citations omitted). There was some record support for the prosecutor's argument. Jones testified that he failed to come to court the first time because he felt threatened by "two guys" near his house. After his release from the juvenile detention facility, Jones was approached by some men who asked him why he was going to court, then informed him they had guns and that they could have "got" him. The victim's grandmother, Baby Gee Joshual, testified that Jones contacted her after trial and claimed that he testified falsely at Kelly's trial because he was afraid. Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive the petitioner of a fair trial. *See United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

The petitioner contends that the prosecutor committed misconduct by referring to a man named "Lamar", who was a possible witness, but failed to appear in court. The petitioner refers to the prosecutor's comment that Lamar failed to appear at the co-defendant's preliminary examination. However, there was testimony that a Lamar Duncan had been a potential witness and that the police had tried, but failed, to locate him so that he could come to court and testify. Because there was some evidentiary support for the prosecutor's comments, they were not improper.

The petitioner next contends that the prosecutor improperly commented on his right not to testify, when she said "You never heard, you never heard either one of those defendants say or either one of those witnesses here say that they recanted about Darius." It is well established that a prosecutor may not invite the jury to infer guilt from the defendant's decision not to testify by "solemnizing the silence of the accused into evidence against him." *Griffin v. California*, 380 U.S. 609, 614 (1965). Nor may a prosecutor "suggest[ ] to the jury that it may treat the defendant's silence as substantive evidence of guilt." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). But here,

the prosecutor did not comment on the petitioner's right to testify because her comments, when viewed in context, show that the prosecutor misspoke, as she was clearly referring to the witnesses and not the defendants.

The petitioner's last accusation of prosecutorial misconduct is the "improper" attack on defense counsel by referring to some of his arguments as "red herrings." No misconduct occurred there. The Sixth Circuit held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee*, 231 F. App'x 469, 480 (6th Cir. 2007) (quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)). A prosecutor's isolated comments in closing argument that the defense was engaging in legerdemain is not an improper disparagement of defense counsel. *Ibid.* The term "red herrings" was not an improper attack upon defense counsel, but was simply a remark made by the prosecutor upon the merits of the petitioner's case. *Graham*, 125 F. App'x at 634-35.

Finally, the petitioner says that his lawyer's failure to object to these instances of misconduct by the prosecutor amounted to constitutionally ineffective assistance. It did not. For the reasons stated, the petitioner cannot establish *Strickland*'s prejudice component.

## C.

The petitioner next contends that the prosecutor's two main witnesses — Dykes and Jones — committed perjury.

A prosecutor who deliberately introduces false testimony can undermine the fairness of a criminal trial; such practice "is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972); *see also Anderson v. Jackson*, 567 F. Supp. 2d 973, 981

(E.D. Mich. 2008). There is also a denial of due process when the prosecutor allows false testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted).

To prevail on a claim that a conviction was obtained by perjured testimony, the petitioner must show that the statements were actually false, the statements were material, and the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner also must show that a witness's statement was "indisputably false," rather than merely misleading. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in witness testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. The fact that a witness contradicts himself or another witness or changes his story also does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). "A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial." *Ibid.*

The only evidence that the petitioner offers in support of his perjury claim is that Dykes and Jones changed their stories. True enough. Jones said that he had been threatened several times. But the petitioner has not offered any conclusive evidence that Jones's and Dykes's trial testimony was false. The jury was made aware of their prior inconsistent statements and chose to credit their trial testimony. The petitioner is not entitled to relief on his third claim.

### D.

The petitioner contends that the evidence was not sufficient to convict him of second-degree murder. His main contention is that because the alleged principal, Kelly, was acquitted, the evidence that he aided and abetted Kelly cannot support his own conviction. He also argues that his conviction was against the great weight of the evidence.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In a habeas corpus proceeding, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)).

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. Mich. Comp. Laws § 750.317; *People v. Goecke*, 457 Mich. 442, 474, 579 N.W.2d 868, 878 (1998) (citing *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325, 331 (1996)). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.

*Id.* at 464, 579 N.W.2d at 878 (citing *People v. Aaron*, 409 Mich. 672, 678, 299 N.W.2d 304, 326 (1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 463, 584 N.W.2d 610, 612 (1998).

The evidence plainly supported the State's theory that Jajuan Gardner was murdered, when he was shot with a gun during an argument. And the evidence supported the contention that Kelly was the shooter. His previous acquittal did not undermine an aiding and abetting charge. To convict a defendant as an aider and abettor, the State must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007) (*citing People v. Carines*, 460 Mich. 750, 757-58, 597 N.W. 2d 130 (1999)). As noted earlier, under Michigan law, a conviction of a principal is not a prerequisite to a valid conviction of being an aider and abettor. *See People v. Paige,* 131 Mich. App. 34, 39, 345 N.W.2d 639 (1983). The petitioner could therefore be convicted as aider and abettor in the killing, even though the principal defendant was acquitted, as long as the testimony clearly indicated that a murder had been committed and that there was sufficient evidence to conclude that the petitioner aided and abetted in the crime. *See People v. Youngblood,* 165 Mich. App. 381, 389; 418 N.W.2d 472 (1988). That rule is consistent with federal criminal law. *See Standefer v. United States,* 447 U.S. 10, 20 (1980); *United States. v. Price,* 258 F. 3d 539, 546 (6th Cir. 2001).

Here, there was ample evidence that during the argument, the petitioner handed Kelly the gun that Kelly used to shoot Gardner. The jury reasonably could have accepted that evidence in reaching its finding of guilt.

The petitioner's "great weight" argument will not provide him a basis for relief. A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).

Finally, the petitioner contends that the evidence was insufficient because the witnesses were not believable. Attacks on witness credibility are challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The petitioner is therefore not entitled to habeas relief on this claim. *See Tyler v. Mitchell*, 416 F. 3d 500, 505 (6th Cir. 2005).

E.

The petitioner's final claim is that his right to a public trial was violated when the judge closed the courtroom to the public during *voir dire*. In *Presley v. Georgia*, 558 U.S. 209, 216 (2010), the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the *voir dire* of prospective jurors, when

the court failed to consider reasonable alternatives to closure. But there is no evidence that such a closure occurred here.

Nothing in the transcript from December 13, 2007 indicates that the judge ordered that the courtroom be closed to the public during jury selection. The only evidence that the petitioner points to is comments that the petitioner's family members may have been engaged in verbal disputes in the hallway on the day of jury selection or the second day of trial and defense counsel's reference to the petitioner's family being "kind of put out" because of the argument, although counsel did not specify which date that the family was ordered out of the courtroom. *See* Trial Tr. at 3-8 (Dec. 17, 2007). Because there is no evidence that the judge closed the courtroom to the public during *voir dire*, the petitioner is not entitled to relief on his claim or his related ineffective assistance of counsel claim.

## III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 30, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI